UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN CALLAHAN,<br><br>                              Plaintiff,<br><br>                    -v-<br><br>HSBC SECURITIES (USA) INC.,<br>                              Defendant. | 22-CV-8621 (JPO)<br><br><u>OPINION AND ORDER</u> |

J. PAUL OETKEN, District Judge:

Plaintiff Stephen Callahan brings this action against HSBC Securities (USA) Inc.

("HSBC"), asserting claims under Section 806 of the Sarbanes-Oxley Act of 2022 ("SOX"),

codified at 18 U.S.C. § 1514A, and under Section 740 of the New York Labor Law.  (ECF No.

39 ("FAC").)  Before the Court is HSBC's motion to dismiss pursuant to Rules 12(b)(1) and

12(b)(6) of the Federal Rules of Civil Procedure.  (ECF No. 44.)  For the reasons that follow,

HSBC's motion to dismiss is granted in part and denied in part.

**I.      Background**

      **A.      Factual Background**

The following facts are taken from the First Amended Complaint and are assumed true

for the purposes of this opinion.

Callahan is a trader with almost thirty years' experience working in the financial industry.

(FAC ¶ 14.)  HSBC is a bank holding company incorporated in Maryland and with its principal

executive offices in New York.  (*Id*. ¶ 13.)  Callahan joined HSBC as a director working on the

U.S. Rates trading desk on August 23, 2021 and was fired by the bank on April 5, 2022.  (*Id*.

¶¶ 2, 18, 28, 99.)

In sum and substance, Callahan alleges that HSBC undertook a series of retaliatory actions against him, culminating in his termination, after he repeatedly reported HSBC traders engaging in an illegal form of trading called "front-running."  Front-running is the practice of trading for a bank's own proprietary account using advance, non-public knowledge of pending client orders that will affect the price of a security.  (*Id*. ¶¶ 33-36.)  Callahan alleges that throughout his tenure at the bank, he observed HSBC traders engaging in front-running.  (*Id*. ¶ 33.)  He also alleges that he witnessed managers instructing junior traders to engage in front-running, as well as traders openly talking about front-running.  (*Id*. ¶¶ 39, 44-51, 61.)  Callahan further alleges that he fielded customer complaints about the bank's aggressive trading before fulfilling client orders.  (*Id.* ¶ 82.)

Callahan reported his concerns about front-running to HSBC managers and supervisors on multiple occasions during his tenure between September 2021 and February 2022.  (*Id*. ¶¶ 36-73.)  Callahan also notified an attorney with the U.S. Commodity Futures Trading Commission ("CFTC") about the bank's trading practices in early March 2022.  (*Id*. ¶ 82 n.8.)  In response, HSBC allegedly retaliated against Callahan through a string of adverse actions, including: denying him a promised promotion in December 2021 (*Id*. ¶ 68); suspending him and withholding his bonus on March 2022 (*Id*. ¶¶ 83-86); and firing him in April 2022 and subsequently filing a negative Form U5 with the Financial Industry Regulatory Agency ("FINRA") (*Id*. ¶¶ 99, 103).

HSBC informed Callahan that it was suspending him in response to a letter that it received in March 2022 from the Chicago Mercantile Exchange ("CME") requesting information about five of Callahan's trading sequences.  (*Id*. ¶ 89.)  Callahan alleges that this was a routine industry request and that HSBC does not typically place traders on administrative leave while

reviewing CME information requests.  Callahan further alleges that HSBC had no pre-existing disciplinary policy that mandated his suspension pending investigation.  (*Id.* ¶¶ 90-91.)  After interviews with HSBC attorneys on March 9 and March 11, 2022, Callahan retained counsel, who asked for more information about the trades in question.  (*Id.* ¶¶ 88, 94-96.)  On April 4, 2022, Callahan's counsel also offered to share additional information with the bank about Callahan's concerns about front-running at HSBC.  (*Id.* ¶ 98.)  The next day, HSBC fired Callahan, explaining that his trading created "risk" for the bank.  (*Id.* ¶ 99.)  HSBC subsequently filed a negative Form U5 for Callahan with FINRA.  (*Id.* ¶ 103.)

### B.      Procedural History

On September 30, 2022, Callahan filed a complaint with the Occupational Safety and Health ("OSHA") alleging that HSBC violated SOX.  (*Id.* ¶ 8.)  On October 11, 2022, Callahan, invoking the Court's diversity jurisdiction, filed a complaint asserting a retaliation claim under Section 740 of the New York Labor Law.  (ECF No. 1.)  On February 2, 2023, HSBC filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (ECF No. 24.)  The Court denied the motion as moot after Callahan filed his First Amended Complaint on May 18, 2023, which included a retaliation claim under SOX.  (ECF No. 36; ECF No. 39.)  HSBC filed a motion to dismiss the First Amended Complaint under Rules 12(b)(1) and 12(b)(6) on June 28, 2023. (ECF No. 44.)  Callahan filed his opposition on July 14, 2023 (ECF No. 50), and HSBC filed its reply on August 7, 2023 (ECF No.54).

## II.      Legal Standards

### A.      Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint need not contain "detailed factual allegations," but it must offer

something "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).  A
plaintiff must plead "factual content that allows the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  In
resolving a motion to dismiss, the Court must accept as true all well-pleaded factual allegations
in the complaint, "drawing all reasonable inferences in favor of the plaintiff."  *Koch v. Christie's
Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

**B.       Rule 12(b)(1) Motion to Dismiss**

Rule 12(b)(1) requires a claim be dismissed for lack of subject matter jurisdiction "when
the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v.
United States*, 201 F.3d 110, 113 (2d Cir. 2000).  A plaintiff must allege facts establishing that
subject matter jurisdiction exists.  *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003).  "In
a motion to dismiss [for lack of subject matter jurisdiction] pursuant to Fed. R. Civ. P. 12(b)(1),
the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of
jurisdiction, or both."  *Robinson v. Gov't of Malaysia*, 259 F.3d 133, 140 (2d Cir. 2001).

While a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all
uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of
the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has
the power and obligation to decide issues of fact by reference to evidence outside the pleadings,
such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden
of proving by a preponderance of the evidence that it exists."  *Tandon v. Captain's Cove Marina
of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (internal quotation marks and citations
omitted); *Ernst v. Gateway Plaza Mgmt. Corp.*, No. 11-CV-1169, 2012 WL 1438347, at *2

(S.D.N.Y. Mar. 14, 2012) ("In deciding jurisdictional issues, the court may rely on affidavits and other evidence outside the pleadings.").

## III.   Discussion

The Court first addresses Callahan's federal claims and concludes that the Court lacks subject matter jurisdiction to hear Callahan's promotion, suspension, and bonus claims under SOX.  The Court also concludes that Callahan has plausibly pleaded retaliation claims under SOX based upon his termination and HSBC's Form U5 filing.  The Court then addresses Callahan's claims under Section 740 of the NYLL and determines that all of his state law retaliation claims survive the Rule 12(b)(6) motion to dismiss.

### A.   SOX

#### 1.   Subject Matter Jurisdiction

HSBC moves to dismiss Callahan's promotion, suspension, and bonus claims under SOX for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  "Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d Cir. 2008 (citation omitted), *aff'd*, 561 U.S. 247 (2010).  Under SOX, an employee must first exhaust his administrative remedies before bringing a claim in federal court.  *Daly v. Citigroup Inc*., 939 F.3d 415, 427 (2d Cir. 2019).  The Second Circuit has held that the administrative exhaustion requirements of SOX are jurisdictional, and the statute grants federal jurisdiction only after its specific administrative remedies have been exhausted.  *Id*.

To exhaust administrative remedies under SOX, an employee must file a complaint with the Secretary of Labor. 18 U.S.C. § 1514A(b)(1)(A)-(B).  Only "if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such

delay is due to the bad faith of the claimant" may an employee bring an action in federal court. *Id.* An employee must file the complaint with the Secretary "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." 18 U.S.C. § 1514A(b)(2)(D). The Secretary of Labor has delegated the responsibility for adjudicating SOX claims to OSHA. 29 C.F.R. § 1980.103(b)-(d)).

Here, Callahan filed his complaint with OSHA on September 30, 2022. (FAC ¶ 8.) It is undisputed that three of the allegedly retaliatory actions occurred more than 180 days before Callahan's OSHA complaint: the failure to promote (early December 2021), suspension (March 7, 2022), and withholding of the bonus (March 7, 2022). (*Id.* ¶¶ 68, 83, 86.) Callahan suggests that there is a circuit split on the question of whether SOX's administrative exhaustion requirements are jurisdictional (ECF No. 49 at 22 n. 12), but the law of this Circuit is clear: exhaustion is a jurisdictional prerequisite to suit. *Daly*, 939 F.3d at 428. The Second Circuit has also made clear that when an employer's "misconduct, as alleged, consists of discrete, discriminatory acts, . . . [t]hey do not amount to an overarching policy of discrimination and are, therefore, insufficient to establish a continuing violation for purposes of deferring [the] administrative filing deadline." *Id.* at 429. Callahan, therefore, failed to his exhaust his administrative remedies for his promotion, suspension, and bonus claims. Accordingly, the Court concludes that it lacks subject matter jurisdiction to hear those three claims under SOX and grants the 12(b)(1) motion to dismiss.

### 2.    Merits of the Remaining SOX Claims

Following the threshold inquiry into subject matter jurisdiction, the Court now addresses the two remaining claims under SOX: Callahan's termination and HSBC's Form U5 filing.

Under SOX's whistleblower-protection provision, no covered employer may "discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in

6

the terms and conditions of employment because of" protected whistleblower activity.  18 U.S.C. § 1514A(a).  To state a SOX whistleblower retaliation claim, a plaintiff must plead that "(1) he . . . engaged in a protected activity; (2) the employer knew that he . . . engaged in the protected activity; (3) he . . . suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable action."  *LaBelle v. Barclays Cap. Inc.*, No. 23-448, 2024 WL 878909, at *1 (2d Cir. Mar. 1, 2024) (internal quotation marks and citation omitted).

To state a claim under SOX, Callahan must plead as the first element of his claim that he reported conduct, which he reasonably believed constitutes a violation of 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), § 1344 (bank fraud), or § 1348 (securities fraud), any rule or regulation of the SEC, or any provision of federal law relating to fraud against shareholders, to a federal agency, Congress, or a supervisor.  *See* 18 U.S.C. § 1514A(a)(1); *LaBelle v. Barclays Cap. Inc.*, 664 F. Supp. 3d 391, 405-06 (S.D.N.Y. 2023), *aff'd*, No. 23-448, 2024 WL 878909. Here, Callahan alleges that on multiple occasions between September 2021 and February 2022, he reported trading activity he believed was illegal front-running, in violation of Section 10(b) of the Exchange Act, Exchange Act Rules 10b-5(a) and (c), and FINRA Rule 5720, to several different supervisors and managers at HSBC.  (FAC ¶¶ 36-73.)  Callahan also alleges that he notified an attorney with the CFTC about HSBC's trading practices in early March 2022 (*id*. ¶ 82 n.8) and that he offered to share additional information with HSBC's attorneys in April 2022 (*id*. ¶¶ 97-98).

HSBC does not dispute that reporting front-running is protected activity within the purview of SOX's whistleblower provision.  Instead, HSBC argues that Callahan has failed to allege that he had a reasonable belief that his employer's conduct violated the law.  More

specifically, HSBC contends that Callahan has inadequately pleaded that the particular trading activity he witnessed constituted illegal front-running as opposed to legal trades.

"Whether a belief is 'reasonable' contains both subjective and objective components. That is, 'a plaintiff must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation.'" *LaBelle*, 664 F. Supp. 3d at 407 (quoting *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 221 (2d Cir. 2014)).  A mistaken belief does not defeat a whistleblower claim. Employees may still be protected by SOX's whistleblower provision "if they are mistaken about the fact that conduct occurred or mistaken that the conduct they reported in fact violated a specific law, rule, or regulation enumerated in § 1514A—provided that their mistaken belief was both subjectively and objectively reasonable." *LaBelle*, 664 F. Supp. 3d at 407 (internal citations omitted).  Instead, "the objective prong of the reasonable belief test focuses on the basis of knowledge available to a reasonable person in the circumstances with the employee's training and experience." *Nielsen*, 762 F.3d at 221 (internal quotation marks and citation omitted).

Accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff, the Court determines that Callahan has adequately pleaded a reasonable belief that HSBC's conduct constituted illegal front-running.  As alleged, the basis of Callahan's belief included his direct observation of specific trades; overheard conversations on the trading desk; conversations with other employees; a complaint he fielded from a customer about the bank's aggressive trading practices; and his knowledge of HSBC's institutional history of front-running.  HSBC does not appear to dispute Callahan's subjective belief.  Instead, the bank argues that Callahan has not alleged facts sufficient to support a reasonable belief because his complaint does not plead certain specific facts, such as HSBC's customer disclosures or order-handling

guidance from customers, that would distinguish illegal front-running from legal trading activity. HSBC's arguments may go to the question of whether Callahan was mistaken in his belief, but the statute does not require a whistleblower to prove an actual violation of the law.  Rather, the proper inquiry is whether "a reasonable person in the same factual circumstances with the same training and experience as the aggrieved employee . . . would have believed that the conduct was a violation."  *Nielsen*, 762 F.3d at 221 (internal citations and quotation marks omitted).  Based on the specific trades, admissions from traders, client complaints, and institutional history alleged in the complaint, Callahan has adequately pleaded that a reasonable employee with the same training and education would have believed that the conduct was front-running.  Accordingly, the Court concludes that Callahan's complaint satisfies the first prong of SOX's requirements. The Court also concludes that Callahan's allegations of his multiple reports of suspect trading activity to HSBC supervisors and managers satisfy SOX's second requirement that HSBC know that Callahan engaged in protected activity.

The Court turns to Callahan's termination, which is undisputedly an adverse employment action under SOX.  *See* 18 U.S.C. § 1514A(a).  Callahan's termination claim, therefore, rests on the statute's fourth prong: whether Callahan has plausibly alleged that his protected activity was a contributing factor to his termination.  In *Murray v. UBS Securities, LLC*, the Supreme Court recently overturned Second Circuit precedent and clarified that the fourth prong does not require a plaintiff to prove his employer's retaliatory intent or animus.  144 S. Ct. 445, 456 (2024) (reversing *Murray v. UBS Sec., LLC*, 43 F.4th 254 (2022)).  A plaintiff also need not show that his "protected activity was a significant, motivating, substantial, or predominant factor in the adverse personnel action."  144 S. Ct. at 450 (internal quotation marks omitted).  Instead, a plaintiff meets his burden by "prov[ing] that his protected activity 'was a contributing factor in

the unfavorable personnel action alleged in the complaint.'"  *Id*. at 449 (quoting 49 U.S.C.
§ 42121(b)(2)(B)(i)).

The Supreme Court's guidance on how to define "contributing factor" emphasizes the
phrase's breadth.  "The ordinary meanings of the words 'contribute' and 'factor' suggest that the
phrase 'contributing factor' is broad indeed.  See Webster's New World College Dictionary 317
(4th ed. 1999) (defining 'contribute,' in the relevant sense, to mean 'to have a share in bringing
about (a result); be partly responsible for'); *id*., at 508 (defining 'factor' as 'any of the
circumstances, conditions, etc. that bring about a result.')."  *Murray*, 144 S. Ct. at 455.  Although
"[s]howing that an employer acted with retaliatory animus is one way of proving that the
protected activity was a contributing factor in the adverse employment action, . . . it is not the
only way."  *Id*.  Plaintiffs may meet their burden through other circumstantial evidence that
might permit an inference of causation, such as "temporal proximity, indications of pretext,
inconsistent application of an employer's policies, an employer's shifting explanations for its
actions, antagonism or hostility toward a complainant's protected activity, the falsity of an
employer's explanation for the adverse action taken, and a change in the employer's attitude
toward the complainant."  *Williams v. JPMorgan Chase & Co.*, 21-CV-9326, 2022 WL 2967881,
at *7 (S.D.N.Y. July 26, 2022) (internal quotation marks and citation omitted).

Based on the totality of the pleadings, including the untimely SOX claims that
nonetheless can serve "as background evidence in support of a timely claim," *Nat'l R.R.
Passenger Corp. v Morgan*, 536 U.S. 101, 113 (2002), the Court determines that Callahan has
cleared the relatively low bar of adequately pleading causation for his dismissal claim.  Drawing
all reasonable inferences in Callahan's favor, the Court bases this determination upon these
specific allegations: the temporal proximity between Callahan's reports and the string of adverse

actions leading up to his termination; the indications of pretext in HSBC's explanation for his termination; and HSBC's inconsistent application of policies and its differential treatment of Callahan compared with that of other employees.  Even though, as HSBC argues, the March 2022 CME letter may have been an intervening event, it does not sever all temporal or causal inferences between Callahan's protected activity and his termination.  HSBC's argument would be more persuasive if Plaintiff were required to prove "but-for" causation, but the law here requires only that Plaintiff show the protected activity was a contributing factor.  Callahan's complaint plausibly supports the allegation that the CME information request provided the pretext for retaliatory action, especially given HSBC's allegedly inconsistent disciplining of similarly situated employees.  Callahan's dismissal claim survives the 12(b)(6) motion to dismiss.

The Court also determines that Callahan has stated a plausible retaliation claim based on HSBC's negative Form U5 filing.  Even though the Form U5 filing was compulsory under FINRA rules after Callahan's departure from the bank, *see Daly*, 939 F.3d at 419, the filing and its contents are inextricably linked to Callahan's termination and the factual circumstances that led to it.  Drawing all reasonable inferences in Callahan's favor, the Court determines that Callahan has alleged sufficient facts to support the inference that his protected activity was a contributing factor to the negative filing.  Accordingly, the Court concludes that Callahan has adequately pleaded a claim under SOX based on HSBC's Form U5 filing.

### 3.    NYLL § 740

A threshold question for Callahan's state law claims is whether the current version of Section 740 of the NYLL applies retroactively to Callahan's promotion claim.  HSBC's failure to promote Callahan allegedly occurred in December 2021 (FAC ¶ 69), which was before the latest amendment to Section 740 became effective in January 2022.  *See* Act of Oct. 28, 2021,

ch. 522, 2021 N.Y. Laws 4394-A (codified as amended at NYLL § 740).  Under the earlier

version of Section 740, plaintiffs were required, at the pleading stage, to describe how the actions

they reported "present[ed] a substantial and specific danger to the public health or safety."  N.Y.

Lab. Law § 740(2)(a); *see HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 95-96 (S.D.N.Y. 2020).

Section 740 no longer has such a requirement.  *See Pierce v. Better Holdco, Inc.*, No. 22-CV-

4748, 2023 WL 6386920, at *4 (S.D.N.Y. Sept. 29, 2023).

The Second Circuit has not yet ruled on the retroactive application of the 2021

amendments, and the few courts that have considered the issue have been divided.  *Compare*

*Zhang v. Centene Mgmt. Co., LLC*, No. 21-CV-5313, 2023 WL 2969309, at *16 (E.D.N.Y. Feb.

2, 2023) (holding that the 2021 amendments to Section 740 apply retroactively), *and Williams v,*

*Arc of Rensselaer Cnty.*, 175 N.Y.S.3d 458, 459 (N.Y. Sup. Ct. 2022) (same), *with Zennamo v.*

*Cnty. of Oneida*, No. 21-CV-840, 2022 WL 4328346, at *10 (N.D.N.Y. Sept. 19, 2022)

(applying the earlier version of Section 740 to a claim that pre-dated the 2021 amendments), *and*

*Pisano v. Reynolds*, No. 653347/2022, 2023 WL 3601527, at *3 (N.Y. Sup. Ct. May 23, 2023)

(same).  The Court agrees with the *Zhang* court that the legislative history strongly supports the

view that the 2021 amendments had a remedial purpose intended to correct the restrictive nature

of the prior statutory requirements.  *See Zhang*, 2023 WL 2969309, at *15-*16.  Based on the

legislative history, the Court also agrees that the relevant amendment here expanded

whistleblower protections consistent with the statute's original purpose.  *See* N.Y. Spons.

Memo., 2021 S.B. S4349A.  Because of the law's remedial purpose and the absence of any due

process issues, the 2021 amendments "should be given retroactive effect in order to effectuate

[their] beneficial purpose."  *Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y.

2020) (internal quotation marks and citation omitted).  Accordingly, the Court will apply the current version of Section 740 to all of Callahan's claims.

Section 740 prohibits an employer from "tak[ing] any retaliatory action against an employee . . . because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation."  N.Y. Lab. Law § 740(2)(a).  The statute defines "retaliatory action" as "an adverse action taken by an employer or his or her agent to discharge, threaten, penalize, or in any other manner discriminate against any employer or former employee exercising his or her rights under this section, . . . including but not limited to discharge, suspension, or demotion; . . . [or] actions or threats to take such actions that would adversely impact a former employee's current or future employment."  *Id*. § 740(1)(e).  To state a claim under Section 740, therefore, a plaintiff must plead: (1) activity protected by the statute; (2) retaliatory action; and (3) "some causal connection" between the protected activity and the adverse action.  *Thacker v. HSBC Bank USA, N.A.*, No. 22-CC-7120, 2023 WL 3061336, at *6 (S.D.N.Y. Apr. 24, 2023) (internal quotation marks and citation omitted).

For the reasons already discussed in the Court's analysis of Callahan's SOX claims, the Court determines has Callahan has plausibly pleaded retaliation claims under Section 740 based on his termination and the Form U5 filing.  The Court now addresses Callahan's promotion, suspension, and bonus claims, which the Court lacked subject matter jurisdiction to consider under SOX.  HSBC does not dispute that the alleged failure to promote was an adverse action under Section 740.  Based on the temporal proximity between Callahan's reporting of the illegal activity and the failure to promote, as well as the other circumstantial evidence discussed above,

the Court determines that Callahan has adequately pleaded "some causal connection" between his protected activity and HSBC's failure to promote him.

Suspension is an adverse act expressly covered by the statute.  N.Y. Lab. Law § 740(1)(e).  Even though Callahan's suspension was with pay, the complaint alleges that the suspension was not merely the enforcement of "preexisting disciplinary policies in a reasonable manner" but instead was an "action[] beyond [Callahan's] normal exposure to disciplinary policies."  *Joseph v. Leavitt*, 465 F.3d 87, 91, 92 n.1 (2d Cir. 2006).  Accordingly, the Court determines that Callahan's suspension was an adverse act under Section 740.  The Court likewise concludes that HSBC's withholding of Callahan's bonus qualifies as an adverse act.  With all reasonable inferences drawn in Callahan's favor, the facts alleged in the complaint support the conclusion that HSBC's refusal to pay his bonus was a "materially adverse" action that "might have dissuaded a reasonable worker" from engaging in protected activity.  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  As with the promotion claim, the Court determines that Callahan has adequately pleaded "some causal connection" between his protected activity and the suspension and the withholding of the bonus, based upon the allegations of temporal proximity, pretext, inconsistent treatment, and other circumstantial evidence discussed above. Accordingly, the Court concludes that Callahan has plausibly pleaded his suspension and bonus claims under state law.

In summary, HSBC's 12(b)(1) motion to dismiss Callahan's promotion, suspension, and bonus claims under SOX is granted.  HSBC's 12(b)(6) motion to dismiss Callahan's termination and Form U5 claims under SOX, as well as Callahan's retaliation claims under Section 740, is denied.

**IV.    Conclusion**

For the foregoing reasons, Defendant's motion dismiss is GRANTED IN PART and

DENIED IN PART.

Defendant shall file its answer to the Amended Complaint within 21 days of the date of

this opinion and order.

The Clerk of Court is directed to close the motion at ECF Number 44.

SO ORDERED.

Dated: March 18, 2024
       New York, New York

_____
              J. PAUL OETKEN
          United States District Judge