UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEPHEN CALLAHAN,

                Plaintiff,

-v-

HSBC SECURITIES (USA) INC.,

                Defendant.

22-CV-8621 (JPO)

ORDER

---

J. PAUL OETKEN, District Judge:

      As previewed during the conference held on December 18, 2024 (ECF No. 76), Plaintiff has filed a motion to compel discovery, arguing that HSBC should be ordered to produce documents withheld as privileged in this case. The Court has reviewed and considered the parties' filings, including the attached documents and the relevant authorities. (*See* ECF Nos. 83, 84, 90, 91, 94, & 95.)

      Plaintiff's principal argument is that HSBC has effected an "at issue" or implied waiver of privilege and work product by relying on an "intervening event"—namely, the CME inquiry and subsequent investigation of Plaintiff's trades—that undermines (according to HSBC) any inference of causation with respect to retaliation based on Plaintiff's front-running allegations. Plaintiff contends that HSBC, by relying on the results of its investigation as the real reason for its suspension and termination of Plaintiff, is using its privilege as both "a sword and a shield."

      Courts "have found waiver by implication when a client testifies concerning portions of the attorney-client communication, . . . when a client places the attorney-client relationship directly at issue, . . . and when a client asserts reliance on an attorney's advice as an element of a claim or defense." *In re Cnty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) (citation omitted). "At

1

issue" waiver may occur "even where there is no intention to rely on attorney-client communications." *McGowan v. JPMorgan Chase Bank, N.A.*, No. 18-CV-8680, 2020 WL 1974109, at *6 (S.D.N.Y. Apr. 24, 2020). The touchstone is fairness: "the attorney-client privilege cannot at once be used as a shield and a sword." *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (citation omitted). Thus, courts have held that "the [attorney-client] privilege may implicitly be waived when [a] defendant asserts a claim that in fairness requires examination of protected communications." *Id.* In the determination of whether fairness requires the forfeiture of a privilege, courts must consider the notion of unfairness to the adversary that results "when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged material potentially capable of rebutting the assertion." *Cnty. of Erie*, 546 F.3d at 229 (quoting *John Doe Co. v. United States*, 350 F.3d 299, 306 (2d Cir. 2003)). This determination of whether fairness requires disclosure is made "on a case-by-case basis, and depends primarily on the specific context in which the privilege is asserted." *Id.* (quoting *In re Grand Jury Proc.*, 219 F.3d 175, 183 (2d Cir. 2000)).

Here, HSBC is not relying on advice of counsel as a defense. The question, then, is whether HSBC has nonetheless placed privileged materials at issue by relying on the "results of its investigation," which was overseen and carried out in part by counsel. In other words, does fairness require disclosure of the privileged documents relating to that investigation in order for the plaintiff to have a reasonable opportunity to meet its burden and answer the defendant's evidence in this case?

The Court concludes that the answer is no. First, while the parties argue about whether HSBC's investigation of Plaintiff was—and was required to be—in "good faith," they do not focus on the relevant sense of that phrase. A party's assertion of a "good faith" defense may

indeed result in a waiver of its privilege—when the defense is a "good faith belief *in the lawfulness of [its] conduct*." *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 460 (S.D.N.Y. 2019) (emphasis added). Thus, a waiver of privilege was warranted in *Bilzerian*, where the defendant argued that he did not violate the securities laws because he "thought his actions were legal." *Bilzerian*, 926 F.2d at 1292. The Second Circuit explained that "if [the defendant] asserted his good faith, the jury would be entitled to know the basis of his understanding that his actions were legal." *Id.* at 1294. Similarly, such a waiver may occur in a Fair Labor Standards Act case where a defendant seeks to avoid a finding of willfulness (and thus liquidated damages) by showing that it acted in "subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Enea v. Bloomberg L.P.*, No. 12-CV-4656, 2015 WL 4979662, at *3 (S.D.N.Y. Aug. 20, 2015); *see also Abromavage v. Deutsche Bank Secs. Inc.*, No. 18-CV-6621, 2019 WL 6790513, at *3-4 (S.D.N.Y. Dec. 11, 2019) (privilege waived where good faith defense to punitive damages required employer to show that it did not "discriminate[] in the face of a perceived risk that its actions [would] violate federal law").

However, "[n]ot every assertion of good faith implicates the legal understanding of the party making the claim." *Bank Brussels Lambert v. Chase Manhattan Bank, N.A.*, No. 93-CV-1317, 1996 WL 173138, at *3-4 (S.D.N.Y. Apr. 12, 1996) (finding no waiver of privilege where defendant's affirmative defense was based on defendant's knowledge of facts, not knowledge of law); *accord 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*, No. 12-CV-6808, 2016 WL 1060336, at *2 (S.D.N.Y. Mar. 11, 2016) ("such implied reliance is confined to situations involving a party's state of mind concerning a question of law, such as the

party's belief as to the lawfulness of its conduct"; finding no waiver of privilege where plaintiff invoked facts he knew or should have known, not his state of mind concerning question of law).

This case is not about a "good faith belief in the lawfulness of [HSBC's] conduct." The investigation was about *Plaintiff's* conduct. HSBC is not relying on its "good faith" investigation in a sense that would trigger a privilege waiver. Rather, HSBC is arguing that the investigation provided the *factual* basis for Plaintiff's termination, not that it provided a *legal* mandate or justification. The only sense in which HSBC contends that its investigation was in "good faith" is in the sense that it was what it purported to be—*i.e.*, that it was a bona fide investigation into Plaintiff's trading and conduct.

Plaintiff cites *Barbini* and other cases in which employers raised an *Ellerth/Farragher* defense to liability for sexual harassment. Those case are distinguishable for reasons similar to those discussed above. By raising that defense, an employer places the reasonableness of the investigation itself directly at issue—thus often waiving privilege given the need to examine how the investigation was supervised and conducted. *Barbini*, 331 F.R.D. at 460-62; *see also Johnson v. J. Walter Thompson U.S.A., LLC,* No. 16-CV-1805, 2017 WL 3432301, at *8 (S.D.N.Y. Aug. 9, 2017). As those decisions explain, assessing whether an employer's *investigation* of harassing behavior in the workplace was *reasonable* often requires disclosure of communications that would otherwise be privileged. This case is more like *Robinson v. Time Warner, Inc.*, 187 F.R.D. 144, 147 (S.D.N.Y. 1999), where Judge Sweet rejected a similar theory of waiver, explaining that the employer's "position throughout has been that [the plaintiff] has not been the victim of any discrimination whatsoever, not that [the employer] is somehow insulated from liability due to the investigative process it initiated."

It is understandable, of course, that Plaintiff seeks these privileged documents. As he emphasizes in his reply brief, he hopes to find evidence that HSBC's termination of Plaintiff—and perhaps the investigation itself—were pretextual. But the notion that the privileged materials here include evidence of pretext on HSBC's part (as opposed to, say, HSBC's own possible legal exposure following the CME inquiry) is ultimately speculation. Further, Plaintiff fails to show that the "the validity of those facts [averred by HSBC] can *only* be accurately determined through an examination of the undisclosed [privileged] communication[s]." *McGowan*, 2020 WL 1974109, at *7 (quoting *Cicel (Beijing) Sci. & Tech. Co. v. Misonix, Inc.*, 331 F.R.D. 218, 228 (E.D.N.Y. 2019)) (emphasis added by Judge Gorenstein). The record reveals that HSBC has produced responsive non-privileged documents relating to the investigation, including interview memoranda and its investigation report from March 2022. Plaintiff will also be able to conduct depositions relating to the investigation and his termination. That is sufficient to allow Plaintiff to mount a fair challenge to HSBC's decisionmaking while also preserving HSBC's privilege. As the Supreme Court has explained, "[p]arties may forfeit a privilege by exposing privileged evidence, but do not forfeit one merely by taking a position that the evidence might contradict." *United States v. Salerno*, 505 U.S. 317, 323 (1992).

For similar reasons, the Court rejects Plaintiff's arguments with respect to the attorney work product doctrine. The Court concludes that HSBC has not waived the applicability of work product protection and that Plaintiff has not shown a substantial need for the protected documents. Nor has Plaintiff shown that HSBC has selectively disclosed materials in a manner that effects a waiver or that its privilege logs are deficient.

Finally, the Court denies HSBC's request for fees and expenses under Federal Rule of Civil Procedure 37(a)(5)(B), because Plaintiff's motion, while ultimately failing, was made in

5

good faith (so to speak): to be precise, it was not so lacking in substantial justification as to warrant an award of fees under that Rule.

    For the foregoing reasons, Plaintiff's motion to compel discovery is DENIED.

    The Clerk of Court is directed to terminate the motion at ECF No. 82.

    SO ORDERED.

Dated: May 15, 2025
       New York, New York

                                                      J. PAUL OETKEN
                                           United States District Judge